JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS



2020 JAN 24  PM 1:21

| | |
|---|---|
| BRANDON CALLIER, <br> **Plaintiff,** <br><br> v. <br><br> SunPath LTD, National Car Cure LLC, Northcoast Warranty Services, Inc., and John Does 1-4 <br> **Defendants** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> EP20CV0023 |

**Plaintiff's Original Complaint**

**Parties**

1. The Plaintiff is Brandon Callier, a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. SunPath Ltd. is a Delaware corporation and can be served via registered agent Registered Agent Solutions, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, Florida 32301.

3. Northcoast Warranty Services, Inc. is a Delaware corporation and can be served via registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

4. National Care Cure, LLC is a Florida corporation and can be served via registered agent Zander Collins & Smith, at 1665 Palm Beach Lakes BLVD STE 215, West Palm Beach, FL 33401.

5. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

6. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

7. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

10. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations

of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code 305.053**

23. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

24. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**FACTUAL ALLEGATIONS**

25. The Plaintiff has received at least ten calls over 60 days to his cell phone, 915-383-4604 without consent and not related to an emergency purpose, selling the products

and services of SunPath Ltd. and National Car Cure, LLC for a car warranty through broker Northcoast Warranty Services, Inc.

26. The Plaintiff purchased a car warranty from the defendants and was mailed a policy in the mail to his home address. The Defendants are listed on page D1 (Exhibit 1) and D2 (Exhibit 2) of the policy.

27. Mr. Callier received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of SunPath LTD, National Car Cure, LLC, and Northcoast Warranty Services, Inc. The calls generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS. The Plaintiff received at least ten calls in 60 days.

28. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

29. "Neighborhood spoofing" designed to trick consumers into picking up the call as it appears to be a local call. This call contained a pre-recorded message after a 3-4 second pause of dead air. Several of the calls used neighborhood spoofing tactics, others were real phone numbers from existing callers, innocent victims and businesses whose phone numbers were wrongfully appropriated by the defendants.

30. Plaintiff received the following calls from the Defendants (Table A).

| Date | Time of Call | Phone Number | Name on Caller ID |
|---|---|---|---|
| 19-Nov-19 | 10:25 AM | 915-383-5556 | NA |
| 21-Nov-19 | 12:46 PM | 915-383-1254 | NA |
| 11-Dec-19 | 3:47 PM | 915-383-2503 | Romero Chavarri |
| 16-Dec-19 | 2:28 PM | 915-383-4610 | Mari Villanueva |
| 18-Dec-19 | 11:14 AM | 915-383-1861 | Manuel Ochoa |
| 18-Dec-19 | 8:33 AM | 915-383-4742 | Maria Barraza |
| 19-Dec-19 | 1:11 PM | 915-383-5469 | INIGUEZ |
| 21-Dec-19 | 3:50 PM | 317-527-9965 | Skylar Long |
| 6-Jan-20 | 10:52 AM | 407-272-8548 | G Valentin |
| 21-Jan-20 | 12:59 PM | 915-383-5130 | Vasquez Cordero |

31. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

32. Mr. Callier has a limited data plan. Incoming text messages chip away at his monthly allotment.

33. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

34. No emergency necessitated the calls

35. Each call was sent by an ATDS.

36. None of the defendants ever sent Mr. Callier any do-not-call policy.

37. On information and belief, none of the defendants had a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

38. On information and belief, none of the defendants trained its agents engaged in telemarketing on the existence and use of any do-not-call list.

**Vicarious Liability of the Sellers**

39. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

40. SunPath Ltd., National Car Cure, LLC and Northcoast Warranty Services, Inc. are liable parties as the direct beneficiaries of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and quoted the Plaintiff a contract offering their products and services.

41. The contract shows that the beneficial parties who were gaining customers were National Car Cure, LLC, SunPath Ltd., Northcoast Warranty Services, Inc.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

42. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

43. Every entity in the contract for car warranty services should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

44. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

45. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

46. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

47. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

48. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space
- Reduced data plan usage
- Invasion of privacy
- Lost time tending to text messages
- Decreased cell phone battery life
- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone
- Reduced battery usage
- Annoyance
- Frustration
- Anger

### The Plaintiff's cell phone is a residential number

49. The calls were to the Plaintiff's cellular phone 915-383-4604, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

50. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

51. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

  8.  Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

  9.  Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

  10.  Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

  11.  Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

  12.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for seven calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

  G. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

  H. Such further relief as the Court deems necessary, just, and proper.


January 24, 2020


*[signature]*

Brandon Callier
Pro-se
6336 Franklin Trail
El Paso, TX 79912

# SunPath
gosunpath.com

## Contract Declarations

| Contract Holder | | Service Contract No. |
|---|---|---|
| Ana Callier | | SAF078460 |

| Street Address | | |
|---|---|---|
| 6336 Franklin Trail Dr | | |

| City, State, Zip | | Phone |
|---|---|---|
| El Paso, TX 79912-8154 | | 915-383-4604 |

| Year | Make | Model | VIN | | |
|---|---|---|---|---|---|
| 2013 | LEXUS | RX350 | 2T2BK1BA9DC169679 | | |

| Odometer | Vehicle Purchase Price | Contract Purchase Date | Vehicle Class |
|---|---|---|---|
| 45,683 | | 12/27/2019 | 2 |

| Seller/Dealer/Vendor Name | I.D. |
|---|---|
| NATIONAL CAR CURE | NCC4610 |

| Address |
|---|
| 1665 Palm Beach Lakes Blvd., #215 |

| City, State, Zip | Phone |
|---|---|
| West Palm Beach, FL 33401 | 800-261-0096 |

| Finance Company | Payment Terms |
|---|---|
| Sunsimp INSTALLMENT AGREEMENT | |

| Plan Name |
|---|
| Sunpath Secure Adv Platinum New |

| Plan Term | | Plan Code | Deductible |
|---|---|---|---|
| Months 60 | Miles 100,000 | SPSAPN | $ 100.00 |

| * Validation Period | Surcharges |
|---|---|
| 30 days and 1,000 miles | 4WD |

| Contract Purchase Price | Options ** |
|---|---|
| $3338.00 | |

The purchase of this contract is not required to either obtain financing or to purchase the motor vehicle. You have the right to transfer this Service Contract on the specified vehicle only to a subsequent private owner. Refer to the Transfer provision.

The undersigned purchaser of this Contract acknowledges that parts and labor benefits are subject to the validation period stated above  PER PHONE

**Certification:** The undersigned Purchaser of this Service Contract has selected the above coverage and options and understands that depending upon the coverage plan selected that parts and labor benefits are subject to the validations stated above. I agree that I have read and understand the above Contract provisions and implied warranty disclosure.

| 12/27/2019 | PER PHONE | | Christopher Bowling |
|---|---|---|---|
| Date | Service Contract Purchaser Signature | | Seller/Dealer/Vendor Representative |

NWS-SP-SA-PLATINUM (12-13)

---

**NATIONAL CAR CURE**
1665 Palm Beach Lakes Blvd., #215
West Palm Beach, FL 33401
800-261-0096

Ana Callier
6336 Franklin Trail Dr
El Paso, TX 79912-8154

Congratulations! Your valuable mechanical breakdown protection is detailed in the enclosed contract booklet. Please look it over and call with any questions you may have. Thank you for your purchase; we look forward to servicing your protection needs. Please call us for a quote on any other vehicle in your household. Vehicles under 150,000 miles may qualify for additional coverages, and multi-vehicle discounts are available.

Be sure to familiarize yourself with the coverage, maintenance requirements, and procedures in the event of a mechanical breakdown. Proper maintenance of your vehicle will contribute to a trouble free driving experience. You should follow your vehicle manufacturer's recommended maintenance for your driving habits.

We encourage you to store your new service agreement in your vehicle. This document contains important numbers needed in the event of a breakdown.

Welcome to our family of vehicle owners that have the peace of mind and financial security of mechanical breakdown protection.

**THANK YOU AGAIN!**

*Christopher Bowling*

Protection Specialist

**IMPORTANT CONTACT NUMBERS:**

Claims: 888-990-7786

Roadside: 888-878-8259

Exhibit A

**Secure Advantage PLATINUM**
888.990.7786

Administered by: SunPath Ltd.
Administrative Office:
25 Braintree Hill Park, Suite 100
Braintree, MA 02184
(888) 990-7786

This Contract is between You, the Purchaser and Northcoast Warranty Services, Inc., the Provider/Obligor.

800 Superior Avenue E., 21st Floor
Cleveland, OH 44114
(866) 927-3097

In Florida, the Provider/Obligor and Administrator is SunPath LTD Corp. d/b/a SunPath LTD Corp. of Delaware
FL License #19943, (888) 990-7786

This **SERVICE CONTRACT** is an agreement between **YOU and US. WE, US, OUR** and **PROVIDER** refer to Northcoast Warranty Services, Inc., who is the party responsible to **YOU** for the benefits under this SERVICE CONTRACT, except in any states where required by law, where WE, US, OUR and PROVIDER mean the DEALER from whom YOU purchased or leased the VEHICLE described on the DECLARATION PAGE. **YOU, YOUR** and **CONTRACT HOLDER** refers to YOU, the purchaser of this SERVICE CONTRACT and the Vehicle described in the DECLARATION PAGE of this SERVICE CONTRACT. WE have contracted with SunPath, Ltd., 25 Braintree Hill Park, Suite 100, Braintree, MA 02184, 888-990-7786, hereinafter referred to as **ADMINISTRATOR**, to administer this SERVICE CONTRACT. All inquiries should be directed to the ADMINISTRATOR. Toll-free assistance is available at 888-990-7786.

In Florida this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware, Florida Certificate of Authority No.: 19943. SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT. All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786.

## DEFINITIONS

- AUTHORIZED REPAIR(S), APPROVED REPAIR(S): All repairs must be approved and authorized by the ADMINISTRATOR as a condition of COVERAGE. Repairs performed without the prior approval or authorization from the ADMINISTRATOR will not be covered, except as provided for under Emergency Repairs.

- BREAKDOWN, MECHANICAL BREAKDOWN, MECHANICAL FAILURE: Defects in materials and workmanship of a COVERED PART to perform the function for which it was designed by its manufacturer.

- COVERAGE: The coverage afforded to YOU for YOUR VEHICLE is determined by the PLAN TYPE selected on the DECLARATION PAGE and more fully described in the PLAN COVERAGE section of this SERVICE CONTRACT.

- COVERED PART(S): Parts or components listed under the PLAN COVERAGE and subject to YOUR responsibilities for VEHICLE maintenance under the YOUR OBLIGATIONS section and subject to conditions described under "EXCLUSIONS".

Exhibit 2

D2

NWS-SP-SA-PLATINUM (12-13)      1      NWS-SP-SA-PLATINUM (12-13)